

November 20, 2019

**Via ECF**

Hon. Paul A. Engelmayer
U.S. District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 1035
New York, NY 10007

    Re: *Triton Pacific Securities LLC v. Mission Critical Services Corp.*, Case No. 1:19-cv-05789 PAE (S.D.N.Y.)

Dear Judge Engelmayer,

    On behalf of plaintiff and counterclaim defendant Triton Pacific Securities LLC ("Triton"), I write to move for dismissal of the counterclaim asserted by defendant Mission Critical Services Corp. ("MCS") pursuant to this Court's Order dated September 17, 2019, Docket No. 16 (the "Order"). The Order gave Triton the option to "file a new motion to dismiss" or to "submit a letter to Court, copying MCS, stating that they rely on the previously filed motion to dismiss."

    Triton does rely, in substantial part, on its previously filed motion. Triton's motion dated September 3, 2019, Docket No. 9 (the "Motion"), sought only a more definite statement of Counterclaim Count IX, but it did so based on three potentially fatal flaws in the claim.

    Counterclaim Count IX has now been amended, and it is currently asserted both as MCS's only counterclaim (the "Counterclaim") and as a "third-party claim" against two additional defendants. However, MCS's amendment made no effort to remedy any of the three flaws that Triton's Motion identified. Further, the Counterclaim repeats MCS's materially false allegation concerning the terms of the parties' contract and adds new false allegations which are essential to the Counterclaim's viability. Above all, Triton has now located the "demand letter" on which MCS's Counterclaim relies. It demonstrates unambiguously that MCS's Counterclaim has no basis in fact.

    For these reasons, Triton moves to dismiss MCS's Counterclaim pursuant to Rule 12(b)(6), Fed. R. Civ. P. Triton respectfully submits that, given the Court's Order and the fact that the Counterclaim seeks less than $2,000 in damages, these issues are sufficiently raised by this letter motion. If the Court so directs, Triton can file a separate motion. However, Triton is attempting to keep costs down, in part because it seeks reimbursement under Rule 11, Fed. R.



Civ. P.  Triton's multiple requests that MCS withdraw its Counterclaim for the reasons stated here, or put the Counterclaim on hold in view of the small amount at issue, have proved unsuccessful.  Triton has also refused to delay serving third-party defendants until this motion to dismiss is decided.  Because the schedule for this letter-motion precluded filing a separate motion under Fed. R. Civ. P. 11(c)(2), Triton respectfully seeks sanctions under Rule 11(c)(3).

1. MCS's Counterclaim Should Be Dismissed
   Based on Flaws Identified in Triton's Motion

Triton's Motion sought a more definite statement of MCS's Counterclaim Count IX based on three potentially fatal flaws in the claim as pled.  The Motion argued:

> Counterclaim Count IX seeks approximately $1,500 in interest allegedly due on $19,200 that Triton "withheld" from MCS before paying it in November 2017.  This claim is too vague for Triton reasonably to prepare a response because MCS fails to specify when the $19,200 was invoiced or specify, as the parties' Contract expressly requires, that MCS received no written objection to the invoice.  Indeed, MCS's allegation that Triton "withheld" the $19,200 indicates that Triton did object to MCS's invoice, and Count IX is based on sums withheld after MCS was terminated for incompetence.

> Given MCS's lack of specificity, Triton cannot determine whether Count IX should be dismissed based on the plain words of the parties' contract or whether it should be answered.  MCS also fails to allege a required element of the claim: that MCS complied with its own contractual obligations, despite its failure to provide competent compliance services and its recent misconduct after Triton filed its complaint.  *See*, *e.g.*, *Remis v. Fried*, 31 Misc. 3d 1203 (Sup. Ct. N.Y. County 2011) ("the plaintiff's performance of the contract" is an element of a breach of contract claim under New York law).  MCS therefore should be required to provide a more definite statement.

As this quotation shows, Triton's Motion identified three principal flaws in Counterclaim Count IX: (1) it does not state "when the $19,200," on which Triton allegedly owes interest, "was invoiced"; (2) it does not "specify, as the parties' Contract requires, that MCS received no written objection to the invoice"; and (3) it "fails to allege a required element of the claim:  that MCS complied with its own contractual obligations."  Although these flaws would have justified moving to dismiss under Fed. R. Civ. P. 12(b)(6), Triton only sought a more definite statement because the flaws appeared to be easily remediable. However, MCS's Counterclaim, as amended from Counterclaim Count IX, makes no attempt to remedy these flaws:  it does not allege when MCS's $19,250 was invoiced, that Triton did not object to the invoices, or that MCS satisfied its own contractual obligations.  It reads, in full, as follows:

420 Lexington Avenue, Suite 400, New York, NY 10170
Tel: 646-998-5580 I  Fax: 646-998-8284 I  info@grifflegal.com   I  www.grifflegal.com

2



> 104.  Section 4(d) of the Contract provides that TPS and its affiliated entities, Triton Pacific Advisors ("TPA") and Triton Pacific Investment Corporation ("TPIC"), ***will be responsible to pay interest on any amounts invoiced and not paid within 30 days*** at a rate of the lesser of 1.5% per month or the maximum amount allowed by law.
>
> 105.  ***Between February 2017 and November 2017, TPS withheld amounts due to MCSC for services rendered prior to May 23, 2017*** in the aggregate amount of $19,250.
>
> 106.  TPS was aware that interest was owed because ***the Contract and each invoice sent by MCSC clearly indicate*** that amounts due are net 15 days and ***that interest commences to accrue thereafter***.
>
> 107.  Among its efforts to collect this unpaid debt, on or about November 10, 2017, MCSC sent a demand letter in which it claimed breach of contract and contract damages, ***including specifically interest then owed***, and threatened to file a draft summons and complaint attached thereto.
>
> 108.  The principal amount owed was ***eventually*** paid, but not such interest.
>
> 109.  MCSC now demands such interest in an amount to be adduced at trial together with payment of all costs of collection including attorney's fees.

(MCS's Answer dated October 29, 2019, Docket No. 21 (emphasis added).)

Given MCS's failure even to attempt to remedy its Counterclaim's flaws, despite its ample opportunity to do so, its Counterclaim should be dismissed.  It is both unreasonably vague and legal deficient, and should be dismissed for failure to plead at least one essential element. *See*, *e.g.*, *Remis v. Fried*, 31 Misc. 3d 1203 (Sup. Ct. N.Y. County 2011) ("the plaintiff's performance of the contract" is an element of a breach of contract claim under New York law).

2. MCS's Counterclaim Should Be Dismissed with Prejudice Because Its
   <u>Essential Allegations Are Disproved by the Documents that MCS Itself Relies On</u>

MCS's Counterclaim should also be dismissed, with prejudice, because the contract and demand letter that the Counterclaim relies on disprove the Counterclaim's essential allegations.  The Counterclaim alleges that interest was automatically due under the parties' contract, that MCS demanded interest no later than November 2017, and that Triton paid the principal MCS billed it for, but not the interest.  These allegations are demonstrably untrue.

The facts are these:  The parties' contract provided that MCS "reserve[d] the right" to charge interest on "the amount past due," but ***not*** that interest would be charged automatically, and MCS did not actually assert a right to charge interest until it filed its Counterclaim.  At that point, ***no amount*** was past due because the invoices at issue had been paid two years earlier.

420 Lexington Avenue, Suite 400, New York, NY 10170
Tel: 646-998-5580 I  Fax: 646-998-8284 I  info@grifflegal.com   I   www.grifflegal.com

3



MCS's November 10, 2017 "demand letter" – which MCS admits was paid in the same month in which it was sent – does not, as MCS falsely claims, demand interest under the parties' contract. Further, as shown below, every highlighted word or phrase in the Counterclaim as quoted above is either materially misleading or demonstrably false.  Triton respectfully requests that this Court direct MCS to show cause under Rule 11(c)(3), Fed. R. Civ. P., why it should not impose sanctions for the costs of responding to MCS's baseless Counterclaim.  As Triton advised MCS repeatedly, this Court is entitled to the truth.

The parties' contract did *not* provide, as the Counterclaim alleges, that Triton "will be responsible to pay interest on any amounts invoiced and not paid within 30 days" or, as the Counterclaim also and inconsistently alleges, that "interest commences to accrue" after 15 days. (Counterclaim ¶¶ 104, 106.) Rather, the contract states only that MCS "***reserves the right ... to ... charge interest*** on the amount past due..." (*See* Contract, annexed as Exhibit 1, ¶ 4(d).) Also, MCS's invoices did not become "payable by Client" unless and until no written objection was received within fifteen business days after receipt. (*Id.*)

On or about November 10, 2017, MCS billed Triton for the $19,250 it mentions in Paragraph 105 of its Counterclaim.  (*See* Counterclaim ¶¶ 105-07; Letter dated November 10, 2017, annexed as Exhibit 2 (the "Demand Letter").) It is not yet clear whether this sum was genuinely due or deliberately "withheld," or whether Triton notified MCS of objections to any of it.  However, though MCS's errors are material only to calculation of the amount at issue, the Counterclaim is incorrect when it alleges that "Between February 2017 and November 2017, TPS withheld amounts due to MCSC for services rendered prior to May 23, 2017 in the aggregate amount of $19,250." (Counterclaim ¶ 105.)  The Demand Letter actually asks for $19,250 based on five attached invoices which state that they became due at different times between March 22 and July 21, 2017, and included "compliance services for June 2017," not just "prior to May 23, 2017." (*See* Exh. 2.)

Crucially, MCS never actually asserted its contractually "reserved" right to charge interest on the $19,250 – though MCS falsely alleges that it did.  According to MCS's Counterclaim, "on or about November 10, 2017, MCSC sent a demand letter in which it claimed breach of contract and contract damages, ***including specifically interest then owed***, and threatened to file a draft summons and complaint attached thereto." (Counterclaim ¶ 107 (emphasis added).)  In fact, as Triton pointed out to MCS's counsel in multiple emails on and after November 5, 2019:

> None of the demand letter, its attached invoices or the draft complaint assert any right to charge interest at the contractual rate.  Interest is mentioned only in the "Prayer for Relief" (sic) of MCS's draft complaint, which contains a boilerplate demand for what can only be interpreted as statutory pre-judgment interest.  If contractual interest had been sought, it would have been included in one of the complaint's causes of action for breach of contract.

420 Lexington Avenue, Suite 400, New York, NY 10170
Tel: 646-998-5580 I Fax: 646-998-8284 I info@grifflegal.com   I   www.grifflegal.com

4



MCS does not merely make the false allegation that its Demand Letter sought contractual interest on its $19,250. MCS also makes the false allegation that "***the Contract and each invoice sent by MCSC clearly indicate*** that amounts due are net 15 days and ***that interest commences to accrue thereafter***." (Counterclaim ¶ 106 (emphasis added).)  As discussed above, that is not what the parties' contract says, and it is not what the copies of the invoices attached to the Demand Letter say.  Indeed, if there were any support at all for MCS's allegations, MCS's counsel should have provided it in response to Triton's emails of November 5 and later, most recently November 14.  (*See* Exhibit 3.)  Counsel did not do so.

Given these facts, MCS has no genuine right to the interest it seeks in its Counterclaim. MCS admits that Triton paid MCS's $19,250 demand in the same month that MCS sent it, alleging that payment was "withheld" only through November 2017, despite MCS's misleading further allegation that the $19,250 was "eventually" paid. (Counterclaim ¶¶ 105, 108.) In fact, counsel has been informed that Triton paid the $19,250 within ten days, two years before MCS asserted any right to contractual interest.

Further, the parties' contract precludes MCS from demanding interest now.  The contract states that MCS reserved the right to charge interest only "[I]f payment has not been received as set forth herein" and for "***the amount past due***."  (Contract ¶ 4(d) (emphasis added).)  No amount has been past due since November 2017, and MCS has no right to seek interest retroactively.  In addition, MCS's demand letter asks for $19,250 as the "full amount" of Triton's obligation.  By paying as requested, Triton accepted MCS's settlement offer, and any further claim for interest was waived.

For the foregoing reasons, MCS's Counterclaim should be dismissed with prejudice.  It is well established that a claim may be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) based on documents integral to the complaint even if the documents are not attached.  *See*, *e.g.*, *Cortec Indus v. Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim – and that they apparently most wanted to avoid – may not serve as a means of forestalling the district court's decision on the motion...").  In the alternative, if the Court should determine that the documents negating MCS's Counterclaim are not "integral" to that claim, Triton asks that the instant motion be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d).

There is only one genuine plaintiff in this action – Triton, which trusted MCS to provide compliance services that MCS failed to provide.  MCS's Counterclaim is a baseless and retaliatory act which should be dismissed or withdrawn with prejudice because it is contrary to fact.  Worse, MCS's disregard for the truth, as demonstrated above, is a stern and unfortunate warning of what is to come. (*See also* Letter dated September 17, 2019, Docket No.15 (pointing out that MCS's Mr. Kane had "misrepresented the grounds on which he based his extension

420 Lexington Avenue, Suite 400, New York, NY 10170
Tel: 646-998-5580 I Fax: 646-998-8284 I info@grifflegal.com   I   www.grifflegal.com

5



request" by falsely claiming that he could not "get in touch" with his prior attorney.) MCS should be sanctioned under Rule 11, Fed. R. Civ. P., both to compensate Triton for its unnecessary costs and to deter further misrepresentations to this Court.

    Respectfully submitted,
GRIFFIN HAMERSKY LLP

/s/ Richard K. Milin
Scott A. Griffin
Michael D. Hamersky
Richard K. Milin
420 Lexington Avenue, Suite 400
New York, New York 10170
Telephone: (646) 998-5580
Facsimile: (646) 998-8284

*Counsel for Plaintiff Triton Pacific Securities, LLC*

Triton's submission goes far beyond a letter informing the Court that it relies on its previously filed Motion to Dismiss.  *See* Dkt. 9.  By November 27, 2019, Triton shall either: (1) file a new motion to dismiss, or (2) file a letter on ECF asking the Court and opposing counsel to rely exclusively on the previously filed motion at Dkt. 9.  In either case, MSC's opposition will be due on December 11, 2019, and Triton's reply will be due on December 18, 2019.

As to Triton's request for Rule 11 sanctions, should Triton persist in seeking such relief, that should be filed in a stand-alone motion.  Given Triton's stated basis for seeking sanctions, the parties are advised that the Court will not entertain such a motion until after it has resolved the pending motion to dismiss.  SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: 11/21/2019