UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRITON PACIFIC SECURITIES, LLC,

        Plaintiff and Counterclaim Defendant,

        -v-

MISSION CRITICAL SERVICES CORP.,

        Defendant, Counterclaim Plaintiff, and
        Third-Party Plaintiff,

        -v-

TRITON PACIFIC ADVISER, LLC, TRITON PACIFIC
INVESTMENT CORPORATION, INC., TRITON
PACIFIC CAPITOL PARTNERS, LLC, TRITON
PACIFIC INVESTMENT GROUP, LLC, CRAIG J.
FAGGEN, MICHAEL L. CARROLL, BRIAN D.
BUEHLER, and WENDY POOLE,

        Third-Party Defendants.

---

19 Civ. 5789 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff and counterclaim-defendant Triton Pacific Securities, LLC ("Triton"), a

registered broker-dealer, brings this action against defendant and counterclaim-plaintiff Mission

Critical Services Corp. ("MCS") for breach of contract, breach of fiduciary duty, and related

claims based on MCS's alleged shortcomings as a third-party provider of compliance services,

which resulted in Triton being censured and fined by the Financial Industry Regulatory

Authority ("FINRA").  MCS has responded with a counterclaim against Triton and a third-party

complaint against four Triton affiliates and four Triton employees.

Pending now are motions by Triton and the third-party defendants to dismiss MCS's

amended counterclaim and its third-party complaint, respectively, for failure to state a claim

under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, both motions are

granted.

## I.      Background[1]

### A.      Facts

#### 1.      The Parties

Triton is a registered broker-dealer of securities and has been a FINRA member since

May 2006.  Dkt. 11 (First Amended Complaint, or "FAC") ¶ 6.  Triton is a Delaware LLC with a

principal place of business in Dana Point, California.

MCS is "a consulting firm that primarily provides compliance consulting services to

broker-dealers and to investment advisers."  Dkt. 8 ("Counterclaims") ¶ 194.  It is a New York

corporation.  FAC ¶ 5.

Triton Pacific Adviser, LLC ("TPA"), Triton Pacific Investment Corporation, Inc.

("TPIC"), Triton Pacific Capitol Partners, LLC ("Triton Partners"), and Triton Pacific Investment

Group, LLC ("TPIG," and together with TPA, TPIC, and Triton Partners, the "Triton Affiliates")

are business entities affiliated with Triton.  Counterclaims ¶¶ 183–86.  Craig Faggen, Michael

Carroll, Brian Buehler, and Wendy Poole, (together, the "Triton Employees") are employees of

Triton.  *See id.* ¶¶ 187–90.  The Triton Affiliates and Triton Employees were named in MCS's

original counterclaims, *id.* ¶¶ 183–90, but not in MCS's Amended Counterclaim, *see* ACC

---

[1] The Court draws the facts in this opinion principally from the FAC, Dkt. 9 ("FAC"), the
Amended Counterclaim, Dkt. 21 ("ACC"), and the Third-Party Complaint, *id.  See DiFolco v.
MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for
failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in
the complaint, documents attached to the complaint as exhibits, and documents incorporated by
reference in the complaint.").  For purposes of the motion to dismiss under Rule 12(b)(6), the
Court accepts all factual allegations in the Amended Counterclaim and Third-Party Complaint as
true, drawing all reasonable inferences in MCS's favor.  *See Koch v. Christie's Int'l PLC*,
699 F.3d 141, 145 (2d Cir. 2012).

¶¶ 104–09. TPA and TPIC, however, were named as defendants to MCS's third-party complaint, filed for the first time alongside its amended counterclaim. *Id.* ¶¶ 110–23.  Triton continues to list all of the Triton Affiliates and Triton Employees as third-party defendants.[2]  *See* Dkt. 40 ("Triton Reply") at 1.  Because, for the reasons explained below, the Court dismisses both the Amended Counterclaim and the Third-Party Complaint, the Court assumes *arguendo* that MCS intended to bring its third-party complaint against all of the Triton Affiliates and Triton Employees.

### 2.    MCS's Amended Counterclaim and Third-Party Complaint

Although MCS originally brought nine different counterclaims against Triton, its Amended Counterclaim brings just one claim: that Triton failed to pay interest on five overdue invoices billed from March through June 2017 which were not paid until the end of that year. ACC ¶¶ 104–09.  Specifically, MCS alleges that "[b]etween February 2017 and November 2017, [Triton] withheld amounts due to [MCS] for services rendered prior to May 23, 2017 in the aggregate amount of $19,250," *id.* ¶ 105; that "[Triton] was aware that interest was owed because the Contract and each invoice sent by [MCS] clearly indicate that amounts due are net 15 days and that interest commences to accrue thereafter," *id.* ¶ 106; and that "[a]mong its efforts to collect this unpaid debt, on or about November 10, 2017, [MCS] sent a demand letter in which it claimed breach of contract and contract damages, including specifically interest then owed, and threatened to file a draft summons and complaint attached thereto," *id.* ¶ 107.  MCS alleges that Triton eventually paid the principal due, but not the interest, *id.* ¶ 108, and now seeks the interest, plus costs and attorneys' fees, in its counterclaim, *id.* ¶ 109.

---

[2] As a matter of pleading, this characterization is correct.  A counterclaim is brought by a defendant against a plaintiff, whereas a third-party complaint is brought against non-parties to the action.  *Compare* Fed. R. Civ. P. 13 (counterclaims), *with* Fed. R. Civ. P. 14 (third-party practice).

MCS's Third-Party Complaint is nearly identical to its Amended Counterclaim, except that it seeks the same allegedly unpaid interest from TPA and TPC. *Id.* ¶¶ 110–23.

### B.    Procedural History

On June 20, 2019, Triton filed its complaint. Dkt. 1. On August 13, 2019, MCS filed its answer and counterclaims. Counterclaims. On September 3, 2019, Triton filed a partial motion to dismiss six of MCS's counterclaims and a motion for a more definite statement as to the other three counterclaims. Dkt. 9. On September 3, 2019, Triton filed its First Amended Complaint. FAC. On October 29, 2019, MCS filed its answer, Amended Counterclaim, and Third-Party Complaint. ACC. On December 5, 2019, Triton filed its motion to dismiss the Amended Counterclaim, attaching a memorandum of law ("Triton Mem.") and the declaration of Richard K. Milin, Esq. ("Milin Decl."). Dkt. 28. On December 12, 2019, TPA and TPIC filed a motion to dismiss the Third-Party Complaint, attaching a memorandum of law and the declaration of Michael L, Carroll, Esq. ("Carroll Decl."). Dkt. 37. On January 3, 2020, MCS filed a combined brief in opposition to both motions to dismiss. Dkt. 38 ("MCS Opp'n"). On January 10, 2020, Triton, TPA, and TPIC filed a combined reply brief in support of both motions to dismiss. Triton Reply.

## II.    Discussion

### A.    Materials Properly Before the Court

Before turning to the merits, the Court must determine whether the contract between Triton and MCS, and MCS's November 2017 demand letter, which attached the five unpaid invoices and a draft state court complaint, are properly considered in resolving the motions to dismiss. MCS did not attach these documents to its Amended Counterclaim and Third-Party Complaint, but they were attached to declarations included with both motions to dismiss. *See* Milin Decl., Ex. 1–2; Carroll Decl., Ex. 1–2.

4

"A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks and citations omitted) (collecting cases). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint." *Id.*; *DiFolco*, 622 F.3d at 111 (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). The Second Circuit has explained that a "necessary prerequisite for taking into account materials extraneous to the complaint is that the plaintiff rely on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Nicosia*, 834 F.3d at 231.

Where a motion to dismiss improperly includes a document that is neither incorporated by reference in the complaint nor integral to it, a court must either ignore the extraneous document or "the motion must be treated as one for summary judgment under Rule 56 [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Here, Triton argues that these documents are integral to MCS's Amended Counterclaim and Third-Party Complaint. In the alternative, it asks the Court to treat its motion as one for partial summary judgment.

The Court, finding the documents dispositive, will treat Triton's motions as motions for summary judgment on the Amended Counterclaim and the Third-Party Complaint. All parties have "be[en] given a reasonable opportunity to present all the material that is pertinent" to this issue, Fed. R. Civ. P. 12(d), and no party has suggested that any other evidence is relevant to resolving these claims. Indeed, MCS addresses the merits of a motion for summary judgment in

its opposition brief, arguing that disputes of material fact preclude the pre-trial resolution of its

claims.  MCS Opp'n at 8–9.

### B.      Applicable Legal Standards

To prevail on a motion for summary judgment, the movant must "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a

question of material fact.  In making this determination, the Court must view all facts "in the

light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132

(2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 US. 317, 323 (1986).

If the movant meets its burden, "the nonmoving party must come forward with admissible

evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."

*Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  "A party may not rely on

mere speculation or conjecture as to the true nature of the facts to overcome a motion for

summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation

marks, brackets, and citation omitted).  Rather, the opposing party must establish a genuine issue

of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A); *see*

*also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing

law" will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  In determining whether there are genuine issues of material fact, the Court is

"required to resolve all ambiguities and draw all permissible factual inferences in favor of the

party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236

(2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

      **C.**      **MCS's Amended Counterclaim**

The Court first resolves the motion for summary judgment on MCS's Amended

Counterclaim.  Triton contends that this claim fails because—notwithstanding MCS's allegations

to the contrary, *see* ACC ¶¶ 105–08—MCS never demanded interest at any point between issuing

its invoices to Triton and Triton's ultimate payment of the overdue invoices at the end of 2017.

The Court agrees.  Because no reasonable juror could find that Triton was billed, but failed to

pay, interest on these invoices, the Court grants summary judgment on this claim to Triton.

Beginning with the demand letter, notwithstanding the allegations in MCS's Amended

Counterclaim, it did not "specifically [demand] interest then owed."  *See* ACC ¶ 107.  To the

contrary, the letter informs Triton that it "currently has five (5) outstanding invoices in the total

amount of $19,250.00" and states that "the terms of our agreement with you indicate that invoices

issued by Mission Critical shall be paid within fifteen (15) days upon your receipt thereof."

Carroll Decl., Ex. 2 at 2 ("Demand Letter").  Because Triton had failed to pay the invoices, the

letter informed Triton that it was "in breach" and requested payment "for the full amount of this

obligation, to wit, $19,250.00" within 10 days.  *Id.*  The letter further warned that failure to pay

within 10 days would result in MCS filing an attached draft complaint, "seek[ing] the unpaid

balance due, along with the costs of collection and reasonable attorneys' fees."  *Id.*  The demand

letter does not give any indication that MCS was seeking unpaid interest.  In fact, the word

"interest" does not appear in the letter.

That is consistent with MCS's invoices themselves.  Each of the five invoices charge

Triton for a given number of hours worked at a rate of $275 per hour.[3]  Carroll Decl., Ex. 2

---

[3] The invoices are for the following amounts: $6,531.25 for 23.75 hours of work at $275 per
hour, due on 3/22/2017; $4,675 for 17 hours of work at $275 per hour, due on 4/10/2017; $3,300
for 12 hours of work at $275 per hour, due on 5/4/2017; $3,300 for 12 hours of work at $275 per

at 3–7 ("Invoices").  The word "interest" does not appear on any of the invoices.  The invoices

certainly do not, as MCS alleges in its counterclaim, "clearly indicate that amounts due are net

15 days and that interest commences to accrue thereafter."  ACC ¶ 106.  The later-issued invoices

do not reflect an unpaid balance from their earlier invoices, nor is any interest calculated, even

*sub silentio*, in the balance due.  *See* Invoices.  Most tellingly, the combined total of the five

unpaid invoices is $19,250.00—the same "full amount" sought by MCS in its demand letter.  *See*

*id.*; Demand Letter.  Thus, neither the contemporaneous invoices nor the subsequent demand

letter even hinted that MCS sought interest from Triton.

　　MCS points out that the draft complaint, which was attached to the demand letter but

never filed, refers to interest in its Second Cause of Action.  *See* Carroll Decl., Ex. 2 at 11 ¶ 15

("Defendant failed and refused to pay said sum of $19,250.00, although duly demanded, and as a

result, Plaintiff seeks to receive interests on the sum owed by Defendant to Plaintiff beginning

from March 22, 2017.").  But this, without more, did not put Triton on notice that MCS, at the

time the demand letter was sent, was demanding both the unpaid principal and interest thereon.

To the contrary, that the draft complaint sought more than the demand letter is entirely consistent

with MCS threatening litigation in order to induce Triton's prompt payment.  *See* Demand Letter

("If you fail to make payment within ten days, we will be left with no other recourse but to

commence suit without further notice . . . [the costs from the lawsuit] will exceed the amount of

the invoice[.]").  Notably, however, in spelling out the consequences to Triton of a lawsuit, MCS

referred to "the unpaid balance due, along with the costs of collection and reasonable attorneys'

fees . . . [at] $300 per hour for our collection efforts," but it did not refer to interest on the unpaid

---

hour, due on due on 6/21/2017; and $1,443.75 for 5.25 hours of work due on 7/21/2017.  *See*
Invoices.

balance.  The draft complaint, without more, was therefore insufficient to inform Triton that

MCS sought both the unpaid balance of $19,250.00 and interest, whether or not Triton paid the

balance due within the ten days specified by the demand letter.

Finally, MCS argues that its contract with Triton "permits [it] to charge interest," MCS

Opp'n at 3, and that "the payment of the invoices . . . made after the demand letter was issued

serves as an implicit admission by [Triton] of [its] obligation under the contract," *id.* at 4.  The

actual language of the contract does not go so far.  The contractual provision at issue, a section

entitled "Payment," provides that:

> If payment has not been received as set forth herein, Mission Critical *reserves the right*, in addition to any other rights it may have to (i) suspend the services until such payment is made in full, (ii) charge interest on the amount past due at the lesser of 1.5% per month or the maximum allowed by law and (iii) invoice Client and Client shall be responsible for payment of all costs of collection including attorney's fees.

Carroll Decl., Ex. 1 ("Contract") ¶ 4(d) (emphasis added).  Contrary to MCS's argument, this

provision is not ambiguous, MCS Opp'n at 8–9; its plain meaning is clear.  While the provision

gives MCS the right to charge interest, it does not automatically impose such interest.  And as

the invoices and demand letter make clear, MCS chose not to exercise that right at any point

between the original invoices and Triton's payment of the entire past-due amount.  Moreover, as

Triton rightly points out, and MCS does not contradict, MCS did not make any demand for the

allegedly unpaid interest in the more than 18 months between Triton's settlement of the debt and

Triton's commencement of this litigation.

On the basis of the demand letter and the invoices, the Court concludes that no reasonable

juror could find that MCS demanded interest from Triton that was never paid.  Neither the draft

complaint included with the demand letter, nor the contract between the parties, contradict this

conclusion, nor do they create a dispute of material fact.  The Court therefore grants summary judgment to Triton on this issue and dismisses MCS's sole Amended Counterclaim.

### D.      MCS's Third-Party Complaint

MCS's Third-Party Complaint brings the same allegations as its Amended Counterclaim, except that it alleges that Triton Affiliates TPA and TPIC are also liable for the allegedly billed-but-unpaid interest from the invoices.  Triton argues that there is no basis to bring such a claim against TPA and TPIC when Triton was the only entity that was invoiced by MCS.  Triton Reply at 5–6.[4]  MCS responds that its invoices were addressed to Carroll, an officer of Triton, TPA, and TPIC.  MCS Opp'n at 4–5.  The Court finds Triton's argument far from—as MCS errantly paints it—"between highly improbable and absolutely ridiculous." *Id.*  But the Court need not resolve this dispute.  That is because, at bottom, MCS's Third-Party Complaint rests on the same allegations, supported by the same documents, as its Amended Counterclaim.  And, for the same reasons that no reasonable juror could find on the basis of the demand letter, invoices and draft complaint that MCS was seeking interest from Triton in November 2017, the Court concludes that MCS's Third-Party Complaint seeking that same unpaid interest from the Triton affiliates is equally untenable.  The Court therefore grants summary judgment to the third-party defendants and dismisses the Third-Party Complaint.

### CONCLUSION

For the foregoing reasons, the Court grants partial summary judgment to Triton and dismisses MCS's sole Amended Counterclaim.  The Court further grants summary judgment to the third-party defendants and dismisses MCS's Third-Party Complaint.  Finally, because the Court has dismissed the Third-Party Complaint, the following third-party defendants are also

---

[4] Each of the invoices in question is addressed to: "Triton Pacific Securities, LLC, 10877 Wilshire Blvd., 12th Floor, Los Angeles, CA 90024, c/o: Mr. Michael Carroll."

dismissed: Triton Pacific Adviser, LLC; Triton Pacific Investment Corporation, Inc.; Triton Pacific Capitol Partners, LLC; Triton Pacific Investment Group, LLC; Craig Faggen; Michael Carroll; Brian Buehler; and Wendy Poole.

This litigation will now proceed on Triton's First Amended Complaint.  The parties have already engaged in discovery and a case management conference is currently scheduled for June 19, 2020 at 11 a.m.  *See* Dkt. 43.  In light of the current public health crisis, that conference will take place telephonically on the date and time scheduled.  The Court will provide the parties with dial-in information for the conference the week prior.

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 28 and 37 and dismiss the defendants specified above.

SO ORDERED.

Paul A. Engelmayer
United States District Judge


Dated: May 5, 2020
       New York, New York